IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Southern Division)

| | |
|---|---|
| BORLAND SOFTWARE CORPORATION<br>700 King Farm Blvd., Suite 400<br>Rockville, Maryland  20850,<br><br>          Plaintiff<br><br>     v.<br><br>BLACKBOARD, INC.<br>650 Massachusetts Ave., N.W.<br>Washington, DC  20001<br><br>     Serve On:<br><br>          CSC-Lawyers Incorporating<br>            Service Company<br>          7 St. Paul Street, Suite 1660<br>          Baltimore, Maryland  21202<br><br>          Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

Plaintiff, Borland Software Corporation ("Borland"), by its undersigned attorneys, sues Blackboard, Inc. ("Blackboard") for compensatory and statutory damages in an amount to be established at trial and currently estimated to exceed Six Hundred Fifty Thousand Dollars ($650,000.00) and for other relief.  In support of its claims, Borland states:

### THE PARTIES

1. Borland is a Delaware corporation with its principal place of business in Rockville, Maryland.  Borland licenses and supports business enterprise computer software.

2.     Blackboard is a Delaware corporation with its principal place of business in Washington, D.C.  Upon information and belief, Blackboard provides software and related services in the education market.

### JURISDICTION AND VENUE

3.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds $75,000.00 and because Borland and Blackboard are citizens of different states.

4.     Upon information and belief, Blackboard is subject to the personal jurisdiction of this Court because Blackboard: (i) has purposefully availed itself of the benefits of doing business in Maryland by its business with Borland that is the subject of this action; and (ii) has sufficiently continuous and systematic contacts with this State.

5.     In connection with the claims stated herein, Blackboard paid fees for maintenance to, and received support services from, Borland's office in Rockville, Maryland.

6.     In addition, upon information and belief Blackboard has had and continues to have continuous and systematic contacts with Maryland through Blackboard's business supplying software and related services to educators and students in this State.

7.     Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to Borland's claims occurred in Maryland.

### THE NATURE OF THE ACTION

8.     This action arises from Blackboard's excessive use of Borland's proprietary software.  Blackboard licensed the right for 50 of its employees or agents to use the Borland software product at issue in this action, but Blackboard permitted substantially more than 50 of

its users to access that software. Blackboard thereby exceeded its license and breached the licensing agreement.

## FACTS COMMON TO ALL COUNTS

### A. Borland's SCTM Software

9. Borland developed and owns, in pertinent part, a family of software products known as "Silk." The Silk family of products consists of tools by which software engineers and developers can test and improve their products.

10. A member of the Silk family of products, Silk Central Test Manager ("SCTM"), is a test management system that allows organizations to manage and perform a wide array of software testing activities.

11. Those activities include test design, assignment, scheduling, and execution, results reporting and analysis, and connecting test results to related capabilities such as requirements and issues.

12. "Testing," in the software engineering and development context, involves simulating various tasks the subject computer program may be called upon to perform and using the results to identify and improve those parts of the program that fail to perform to expectations.

13. SCTM is installed on a server. Users access it through a web browser using a password.

14. SCTM includes the ability to manage automated tests from other Silk products, as well as from some third-party and open source tools. In automated testing, SCTM initiates and logs the results of tests that the user has designed and scheduled. SCTM can also perform various functions with the resulting data.

15. SCTM users may also utilize its "manual" testing function, in which users initiate tests and log the results. Like the more advanced features of SCTM, its manual testing function requires users to login through a browser and use an SCTM license.

### B. Borland's MTC Software

16. A Silk product known as Manual Test Client ("MTC") allows users of SCTM who wish to perform tests manually and do not require SCTM's advanced functions to do so through a separate interface for a substantially reduced licensing fee, or for no additional licensing fee at all.

17. Unlike SCTM, MTC is installed on the user's personal computer and launched from its desktop rather than through a web browser.

18. MTC allows users to connect to the SCTM system to download manual tests already assigned to them. Once downloaded, the user can manually execute the test and log its results in MTC. The results can later be uploaded to SCTM.

19. The MTC user's limited connections to SCTM -- to download assigned tests and upload the results of executed tests -- do not require access to the full version of SCTM. MTC therefore does not require an SCTM license.

### C. Borland's MTC and SCTM Licensing Regime

20. At all pertinent times, Borland offered a reasonable number of MTC licenses free-of-charge to customers who purchased SCTM.

21. For the additional features included in SCTM, Borland has at all pertinent times required a licensing fee for each user.

4

22. Available licenses include, in pertinent part, "Named User" licenses that permit a specified individual to use SCTM and "Concurrent User" licenses that permit more than one individual to use the same license.

23. The licensing agreement at issue in this action consists of two documents: the Order Form and the License Terms, true and accurate copies of which are attached hereto, and incorporated herein, as Exhibits A and B respectively.

24. The Order Form identifies the software Blackboard wished to license, the quantity of licenses ordered, the amount of the license fees, and certain terms that would apply to the order and Blackboard's use of the software.

25. Blackboard, by the signature of its Vice President, Justin Tan, accepted and agreed to the terms of the Order Form.

26. Those terms provided, among other things, that "[d]ownloading, installing or using the Borland Products constitutes acceptance of the [License Terms]." Blackboard's agreement to the Order Form therefore also constituted its agreement to the License Terms.

27. The Order Form reflects Borland's grant of an "[u]nlimited" number of cost-free licenses for MTC. In its "Special Terms," the Order Form added:

> solely with respect to the Licenses that are specified as "Unlimited" above ("Unlimited License"), for the two (2) year period commencing on the Order Form Effective Date (the "Unlimited Use term"), Licensee may allow an unlimited number of Named Users (as defined in the Clickwrap Agreement) up to a maximum of one hundred fifty (150) Named Users to use and access the Borland Products specified above as Unlimited Licensees. After the Unlimited User Term has expired, Licensee may continue to use the Borland Products in perpetuity pursuant to the terms set forth in the Clickwrap Agreement, provided that such usage is limited to the number of Named Users who were using the Borland Products on the last day of the Unlimited Use Term (not to exceed 150 Named Users), which shall be specified in a written certification provided to Borland within thirty (30) days of the

expiration of the Unlimited User Term. The Unlimited Licenses granted in this Order are solely for Licensee's employees' internal use only.

28. The Order Form thereby permitted up to 150 Blackboard Named User licensees to use MTC.

29. The Order Form also reflected Blackboard's purchase of 50 Named User licenses for SCTM.

30. The License Terms provide that a Named User license allows "one (1) designated person in your organization ('Named User') a personal, nonexclusive, nontransferable and limited license to use the [SCTM] Product solely for your own internal purposes," except that Blackboard was permitted to:

> replace individuals designated as Named Users with different individuals at any time provided that you will not designate more Named Users than the number of Named User Licenses that Borland or a Borland authorized distributor or reseller has expressly granted to you and you will not allow the product to be used by any individuals other than the Named users designated by you from time to time.

31. The License Terms state that "[a]ll rights not specifically granted to [Blackboard] herein are retained by Borland."

32. Accordingly, the parties' agreement permits no more than 50 Blackboard users to access SCTM and does not permit concurrent use of the SCTM Named User licenses by more than one individual.

**D.** **The Means By Which Blackboard Could Access MTC and SCTM**

33. Blackboard users seeking to access SCTM were required to employ a web browser and login protocol.

6

34. To use MTC, by contrast, Blackboard users were required to run the manual tests in the MTC desktop interface.

35. Authorized SCTM users who wished to perform a purely "manual" test, without using SCTM's advanced features, could do so through MTC's wholly separate interface or could use SCTM's manual testing feature.

36. By using SCTM's manual testing feature, however, Blackboard users were required to deploy an SCTM Named User license because, like the automated features, the manual testing function runs through browser-based SCTM.

37. Because of the clear differences in the manner in which SCTM (including its manual testing capabilities) and MTC may be accessed, Blackboard users knew or should have known when they logged in to SCTM that they were using one of Blackboard's 50 Named User SCTM licenses.

### E. **Blackboard's Breach of the Licensing Agreement**

38. In the course of a review of Blackboard's use of its Borland licenses, Borland discovered what appeared to be an over-deployment of Blackboard's SCTM licenses. Borland therefore asked Blackboard to provide more information about its use of SCTM.

39. Blackboard responded with usage data that purports to cover the period from April 12, 2012 to March 8, 2013. That data shows that there were 221 unique users of SCTM during that period -- more than four times the number permitted by Blackboard's SCTM licenses.

40. To account for the possibility that some of Blackboard's Named User licenses were reassigned from one user to another, in a manner permitted by the License Terms, Borland also reviewed a subset of Blackboard's usage data covering the six-month period from September 8, 2012 to March 8, 2013.

41. The data for that six-month period shows that 167 unique Blackboard users employed SCTM.

42. Of the 167 users, 164 were specifically identified individuals who could be covered by a Named User license. The remaining three users were identified as "admin," "guest," and "scc" -- titles that fail to identify the specific user and could be used by more than one individual.

43. Such generic user accounts require a Concurrent User license because more than one individual can use each license, which is inconsistent with the requirement for Named User licenses that Blackboard specifically designate the individual who will be permitted to deploy each license.

44. Based on the information supplied by Blackboard, its use of SCTM during the period from September 8, 2012 to March 8, 2013 exceeded what was permitted by its 50 Named User SCTM license by approximately 117 licenses, including 114 Named User licenses and three Concurrent User licenses.

45. Blackboard has not confirmed to Borland that Blackboard's use of SCTM peaked during the April 12, 2012 to March 8, 2013 period for which it has made data available.

46. Upon information and belief, Blackboard has exceeded its license by more than the amount it has acknowledged to date.

47. To be adequately licensed, Blackboard was required to purchase from Borland enough Named User licenses to cover every individual Blackboard employee or agent who was designated use SCTM during Blackboard's peak usage.

48.   To be adequately licensed, Blackboard was further required to purchase from Borland enough Concurrent User licenses to cover any and all licenses that were not designated for use by a single individual.

## COUNT I
### (Breach of Contract -- Insufficient Named User Licenses)

49.   Borland incorporates the allegations of the preceding paragraphs herein by reference.

50.   Blackboard entered a licensing agreement consisting of the Order Form and License Terms that defines the terms under which Blackboard could use Borland's SCTM software.

51.   Those terms permitted no more than 50 Blackboard Named Users to access SCTM.

52.   Blackboard allowed substantially more than 50 of its employees or agents to access SCTM without purchasing sufficient licenses or properly designating individuals as Named Users of Blackboard's SCTM licenses.

53.   Of the unauthorized users, most were specifically identifiable individuals who under Borland's License Terms were required to have Named User licenses to access SCTM.

54.   By permitting unlicensed individuals to use SCTM, Blackboard exceeded and breached its SCTM license.

55.   As a direct result of Blackboard's excessive use of SCTM and breach of the license agreement, Borland has suffered and continues to suffer monetary damages, including the loss of license and maintenance fees to which it is entitled in connection with Blackboard's use of Borland's software.

WHEREFORE, Borland requests that this Honorable Court:

(A) award compensatory damages against Blackboard in an amount to be established at trial and currently estimated to exceed Six Hundred Fifty Thousand Dollars ($650,000.00) based on estimated back license fees, go-forward license fees, and applicable maintenance fees;

(B) award Borland pre-judgment interest and the costs, expenses, and reasonable attorneys' fees that it incurs prosecuting this Complaint; and

(C) grant Borland such other and further relief as may appear just and proper.

## COUNT II
### (Breach of Contract -- Insufficient Concurrent User Licenses)

56. Borland incorporates the allegations of the preceding paragraphs herein by reference.

57. Blackboard entered a licensing agreement consisting of the Order Form and License Terms that defines the terms under which Blackboard could use Borland's SCTM software.

58. Under the parties' licensing agreement, no more than 50 Blackboard Named Users were permitted to access SCTM.

59. Blackboard allowed substantially more than 50 of its employees or agents to access SCTM without purchasing sufficient licenses or properly designating individuals as Named Users of Blackboard's SCTM licenses.

60. Of the unauthorized users, at least three were not specifically identifiable individuals, but were instead generic user names that could be used by more than one individual.

61. Under the parties' licensing agreement, such generic user names require a Concurrent User License.

62. By permitting at least three generic user names to access SCTM without purchasing Concurrent User Licenses, Blackboard exceeded and breached its license.

63. As a direct result of Blackboard's excessive use of SCTM and breach of the license agreement, Borland has suffered and continues to suffer monetary damages, including the loss of license and maintenance fees to which it is entitled in connection with Blackboard's use of Borland's software.

WHEREFORE, Borland requests that this Honorable Court:

(A) award compensatory damages against Blackboard in an amount to be established at trial and currently estimated to exceed Six Hundred Fifty Thousand Dollars ($650,000.00) based on estimated back license fees, go-forward license fees, and applicable maintenance fees;

(B) award Borland pre-judgment interest and the costs, expenses, and reasonable attorneys' fees that it incurs prosecuting this Complaint; and

(C) grant Borland such other and further relief as may appear just and proper.

Respectfully submitted,

/S/
Stuart M.G. Seraina, Bar No. 25971
KRAMON & GRAHAM, P.A.
One South Street, Suite 2600
Baltimore, Maryland 21202
(410) 752-6030 - Telephone
(410) 539-1269 - Facsimile

Attorneys for Plaintiff
Borland Software Corporation

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff Borland Software Corporation hereby demands a trial by jury of all issues triable of right by a jury.

/S/
Stuart M.G. Seraina, Bar No. 25971
KRAMON & GRAHAM, P.A.
One South Street, Suite 2600
Baltimore, Maryland 21202
(410) 752-6030 - Telephone
(410) 539-1269 - Facsimile

Attorneys for Plaintiff
Borland Software Corporation